IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEPHEN PAGE; KEISHA PREWITT | : | CIVIL ACTION |
| Plaintiffs, | : |  |
| v. | : |  |
|  | : |  |
| INFINITY INDEMNITY INSURANCE | : | No. 13-1118 |
| COMPANY | : |  |
| Defendant. | : |  |

Norma L. Shapiro, J.                                                                                            January 31, 2014

**MEMORANDUM**

Plaintiffs, Stephen Page ("Page") and Keisha Prewitt ("Prewitt"), filed a complaint alleging breach of contract[1] and bad faith under 42 Pa. Cons. Stat. § 8371 with the Philadelphia County Court of Common Pleas against defendant, Infinity Indemnity Insurance Company ("Infinity") on January 30, 2013; it was timely removed to federal court. Defendant's motion for summary judgment (Dkt. No. 29) on plaintiffs' statutory claim for bad faith is pending.

**I.     Background**

Plaintiffs, husband and wife, had an automobile insurance policy covering plaintiffs' 2002 Mercury Mountaineer. Among other things, defendant's policy required plaintiffs to "[c]ooperate with [defendant] in any matter concerning a claim or suit." Dkt. No. 29, Ex. A at 2.

During the early hours of July 26, 2011, plaintiffs were informed that the Mountaineer, parked on their street block, was on fire. Plaintiffs, having notified defendant of the fire, filed a claim under their insurance policy. The same day, defendant sent an investigator to plaintiffs' home to record an interview with them and initiate an investigation of plaintiffs' claim. On July 27, 2011,

---

[1] The parties have settled the breach of contract claim. The only pending claim is for bad faith.

1

plaintiffs met with defendant's employee, Sean Wright, at defendant's office. Plaintiffs brought a number of requested documents with them, including: copies of recent bills for gas, electricity, and cell phones; Page's pay stub; Prewitt's proof of disability income; tax records; and call records of plaintiffs' cell phones. Plaintiffs also provided recorded statements. Defendant does not dispute that plaintiffs were fully cooperative during this initial investigation and provided all documents requested by defendant at that time.

Defendant referred plaintiffs' claim to its special investigation unit. During its initial investigation, defendant had learned of several matters raising concern. At that time, arson had been identified by the fire department as one of the possible causes of the fire. *See* Dkt. No. 29, Ex. D at 8. Third-party experts confirmed the fire was caused by arson in a report dated August 10, 2011. *See* Dkt. No. 29, Ex. G. Prior to the fire, plaintiffs had never missed a payment on either their insurance policy with defendant or their outstanding car loan for the Mountaineer, but defendant noted several loans on plaintiffs' credit report histories unpaid and referred to collection agencies. Defendant's investigation primarily focused on whether plaintiffs' had a financial motive to set their vehicle on fire.

On August 25, 2011, plaintiffs provided a third set of recorded statements to defendant in interviews with defendant's special investigator, William Jefferson. During Page's recorded statement, Jefferson asked him to provide copies of his bank statements for the months of June and July 2011. Page agreed that he would provide the statements if a representative came to his house to collect them. Dkt. No. 29, Ex. I at 5. Jefferson also asked Page about credit inquiries on Page's credit report revealing he had been shopping for cars before the fire. Page stated he had been "looking for another vehicle for quite a few months now." *Id.* at 3. According to defendant's

2

records, Page's credit report showed that Page had likely visited car dealerships on December 22, 2010, April 26, 2011, May 25, 2011, and June 13, 2011. Dkt. No. 29, Ex. F at 2. During the August 25, 2011, recorded statement, Jefferson did not ask Page to identify the specific dealerships he had visited on those occasions. On September 13, 2011, Wright asked Page by telephone to identify the car dealerships. Page could not recall all of the dealerships he had visited, but said the defendant could probably obtain the names from his credit report. Page also stated he could print the requested bank statements. Dkt. No. 29, Ex. J at 3.

On September 16, 2011, plaintiffs informed defendant that they were represented by counsel and that future inquiries should be addressed to their attorney. Dkt. No. 29, Ex. K at 2. On September 22, 2011, Jefferson placed a phone call to plaintiffs' attorney, Jay Solnick, Esq., and spoke with Solnick's secretary. *Id.* at 3. On September 28, 2011, Solnick spoke by telephone with Jefferson. Jefferson requested Solnick's clients provide: (1) Page's June and July 2011 bank statements; (2) the names of the car dealerships visited by Page; and (3) a copy of the police report of the robbery. *Id.* at 4. Solnick questioned the need for the requested items and did not agree that his clients would provide them at that time. *Id.*

By letter to Solnick by letter dated October 14, 2011, defendant requested the outstanding items and noted that plaintiffs' claim could be denied for their failure to cooperate. Dkt. No. 29, Ex. L. On October 21, 2011, defendant sent a second letter to Solnick advising him that plaintiffs should cooperate with defendant's request for the outstanding items by October 28, 2011, to avoid denial of their claim. Dkt. No. 29, Ex. M at 1-2. On November 2, 2011, defendant closed its investigation and informed Solnick by letter of its denial of the claim. In its November 2, 2011,

letter, defendant stated, "[i]f your clients wish to cooperate, we will reopen the investigation into coverage for this loss." Dkt. No. 29, Ex. M at 6.

During the current litigation, defendant took the deposition of Page. At his deposition, Page identified the location of one car dealership he had visited in 2011 he had failed to identify previously to defendant. *Compare* Deposition of Stephen Page ("Page Depo.") at 44:10-15 (Dkt. No. 29, Ex. P) ("I went to another place right next to Royal . . . .") *with* Dkt. No. 29, Ex. F at 2 (defendant's log noting credit inquiries from "Royal Car CE," "Phila Auto," "Auto Choice" and other locations "indicating car shopping") *and* Dkt. No. 29, Ex. J at 3 (defendant's log notes summarizing car dealerships identified by Page as "Crown Royal," "a place on 66th and Broad," and "a couple places up on Roosevelt Blvd"). Based on the information provided at the deposition, defendant re-opened its investigation on September 6, 2013. Dkt. No. 29, Ex. S at 2-3.

After receiving the bank statements, the police report, and speaking with representatives of car dealerships identified by plaintiffs in August 2011 and July 2013, defendant agreed to pay plaintiffs' underlying claim on September 30, 2013. Dkt. No. 29, Ex. T. The parties have informed the court that the claim has been paid.

## II. Legal Standard for Summary Judgment

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence must be viewed in the light most favorable to the nonmoving party and all reasonable inferences drawn in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The movant must identify those portions of the record showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute

is "genuine" only if there is "sufficient evidence favoring the nonmoving party for a [factfinder] to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Under 42 Pa. Cons. Stat. § 8371, plaintiffs must show bad faith by clear and convincing evidence. The court must consider plaintiffs' heightened burden of proof at the summary judgment stage. *See, e.g.*, *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) ("At the summary judgment stage, the insured's burden in opposing a summary judgment is commensurately high because the court must view the evidence in light of the substantive evidentiary burden at trial.") (internal quotation marks and citation omitted). "Consequently, where the clear and convincing evidence standard applies, the trial judge must inquire whether the evidence presented is such that a [factfinder] applying that evidentiary standard could find only for one side." *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 522 (3d Cir. 2004).

**III. Bad Faith**

    **A. Elements of Bad Faith**

To prevail on their bad faith claim under Pennsylvania law, plaintiffs must show two elements by clear and convincing evidence: (1) defendant had no reasonable basis for its investigative tactics concerning or denial of plaintiffs' claims; and (2) defendant knew of or recklessly disregarded the lack of reasonable basis for its action. *Babayan*, 430 F.3d at 137ha. "[M]ere negligence or bad judgment is not bad faith." *Id.*

    **B.    Whether Defendant Had a Reasonable Basis to Investigate**

Defendant identified multiple "red flags" prompting a thorough investigation of plaintiffs' insurance claim. Plaintiffs, especially Prewitt, had numerous outstanding debts that had been sent for collection. Plaintiffs' house was burglarized only three days before the fire and plaintiffs alleged

they lost both cash and valuables during the burglary. The fire that destroyed plaintiffs' vehicle was caused by arson. Page's credit history showed he was visiting dealerships and inquiring into the purchase of a new car as recently as six weeks before the fire. Prewitt had recently been placed on disability and was receiving only sixty-five percent of her previous salary.

These "red flags" justified defendant's investigation into plaintiffs' finances, plaintiff Page's car shopping, and the burglary to determine whether plaintiffs had an incentive to set fire to their own car or commit fraud. *See, e.g.*, *Brown v. Liberty Mut. Ins. Co.*, No. 99-cv-6596, 2001 WL 87741, at *3 (E.D. Pa. Jan. 30, 2001) (an insurer is entitled to summary judgment when "red flags" justified investigation and delaying settlement); *see also Verdetto v. State Farm Fire & Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011), *aff'd* 510 Fed. App'x 209 (3d Cir. 2013) (same). Defendant had a reasonable basis to investigate plaintiffs' claim.

        C.       **Whether Defendant Had a Reasonable Basis to Deny Plaintiffs' Claim**

Defendant contends plaintiffs' non-cooperation was a breach of the insurance contract and constituted a reasonable basis to deny plaintiffs' claim.

Non-cooperation is a breach of an insurance contract if the policy holder's failure to cooperate is both substantial and causes prejudice to the insurance carrier. *See, e.g.*, *Ania v. Allstate Ins. Co.*, 161 F. Supp. 2d 424, 427 (E.D. Pa. 2001); *see also Verdetto*, 510 Fed. App'x at 211. The burden is on the defendant to show prejudice as a result of plaintiffs' non-cooperation. *See, e.g.*, *Ania*, 161 F. Supp. 2d at 427 ("[A]n insurance company bears the burden of showing that prejudice has resulted from an insured's failure to cooperate.") (citations omitted).

When the record is viewed in the light most favorable to plaintiffs, defendant has not shown that plaintiffs' non-cooperation was indisputably substantial and prejudicial because plaintiffs failed

to provide: (1) plaintiff Page's bank statements from June and July 2011; (2) the names of all car dealerships visited by Page; and (3) the police report of the burglary. Defendant has not shown it had a reasonable basis to deny plaintiffs' claim as a matter of law, but defendant's stated willingness to reopen its investigation makes the issue of bad faith a disputed matter for the finder of fact.

### 1.  *Bank Statements*

Page stated to defendant at least twice that he would "print out" the bank statements for defendant to pick up, but his failure to provide hard copies of account statements from T.D. Bank for the months of June and July 2011 is not indisputably substantial or prejudicial. Both plaintiffs signed a Consent to Disclose and Release Form. This form provided that plaintiffs "authorize[d] Infinity Insurance Companies . . . to have access to and permit transmittal, review and photocopying of . . . Any and all banking . . . records . . . . [and] Copies of the statements of account, invoices, canceled checks or drafts, contracts, releases, agreements, office notes or any other documents." Dkt. No. 32, Ex. G at 1.

Defendant asserts that this authorization "did not address bank records and was not acceptable to T.D. Bank. This is supported by a plain reading of the authorization." Def. Reply at 4 (Dkt. No. 36). A plain reading of the authorization would cover banking records and account statements. There is no evidence on record that any Infinity employee attempted to contact T.D. Bank to obtain the statements with the authorizations or whether or not Page's bank refused to accept the authorizations. Whether defendant could not continue its investigation and was prejudiced because plaintiffs failed to provide the bank statements is a disputed question for the finder of fact.

        2.     *Names of Car Dealerships*

Defendant had the identity of several car dealerships visited by Page between December 2010 and June 2011 from the credit report obtained by defendant on or before August 7, 2011, as noted in Infinity's log notes. Dkt. No. 29, Ex. F at 2. Defendant addressed Page's visits to car dealerships in the recorded statement he gave defendant on August 25, 2011, but Page was not specifically asked which dealerships he had visited during the six-month period prior to the damage to his automobile. Dkt. No. 29, Ex. I at 5-6. In a phone call with defendant on September 13, 2011, Page named one of the dealerships reflected on the credit history report, but was unable to recall the others specifically. He stated the general vicinity in which he was looking at cars and directed defendant to check the credit report because he believed that the identities of the places where he filled out applications would be there. Dkt. No. 29, Ex. J at 3.

At his deposition in July 2013, Page was able to identify the possible location of one other dealership where he may have looked at cars during the period before the fire. Page Depo. at 44:10-15. This prompted defendant to re-open the investigation and eventually pay plaintiffs' insurance claim. *See* Dkt. No. 29, Ex. S at 2-3.

Page's failure to name specifically each of the dealerships he visited over a six-month period was not necessarily substantial non-cooperation. Plaintiff Page named several dealerships and intersections containing dealerships he visited. He testified that he did not keep any of the applications he filled out and could not remember all the places he had visited. Page Depo. at 44:16-45:11. Defendant had obtained Page's credit report listing a number of dealerships where Page had shopped. That report showed Page visited dealerships in December 2010, April 2011, May 2011, and June 2011. Viewing the evidence in the light most favorable to plaintiffs, defendant might have

8

possessed sufficient information to conduct its investigation with the dealerships identified by Page in August 2011 or his credit history report. Page's failure to supply the names of the dealerships was not substantial non-cooperation as a matter of law.

### 3. *Police Report*

It is not undisputed that defendant was prejudiced by plaintiffs' failure to provide the police report of the burglary that occurred on June 23, 2011. It is unclear how the police report would be significant to defendant's investigation. Defendant's special investigator, William Jefferson, testified that the police report could confirm plaintiffs' story that the burglary had actually occurred, "[s]o in that sense, it helps clear to them. On the other sense, it does confirm that they lost $3,000, which doesn't help their financial motive." Deposition of William Jefferson ("Jefferson Depo.") at 68:24-69:10 (Dkt. No. 29, Ex. U). Had no loss been reported at all, then Jefferson would have considered the purportedly stolen $3,000.00 a "red herring." Jefferson Depo. at 68:13-20.

The actual police report corroborates plaintiffs' story that the burglary occurred and items were stolen from the house. Dkt. No. 29, Ex. Q. The report does not mention the $3,000.00 and does not corroborate that allegation about the burglary. Prewitt informed defendant in her recorded statement in August 2011 that this was because she had been unaware of the missing money at the time she reported the burglary to the police. Dkt. No. 29, Ex. I at 16. Defendant was told by plaintiffs two years before obtaining the police report that the report would contain these ambiguities and likely be of little help in investigating plaintiffs' claim.

Jefferson testified that he did not necessarily need plaintiffs' assistance in obtaining the police report of the burglary. Jefferson Depo. at 26:4-9 ("In my experience we have access to police reports related to our particular vehicles as an insurance company and other information shared with

9

us from police is shared on a voluntary basis."); *cf.* Deposition of Sean Wright at 103:24-104:3 (Dkt. No. 29, Ex. V) ("Q. Isn't [the police report] public record? A. It is my understanding that unless it was auto related, as we're not their homeowners insurance, that we would not be able to get that."). Whether plaintiff's failure to provide the police report was a substantial breach that caused prejudice to the defendant is a disputed issue of fact.

### D. Whether Defendant Knew of or Recklessly Disregarded its Lack of Reasonable Basis

Defendant does not address whether plaintiffs can meet their burden regarding the second element of bad faith, that is, defendant's knowledge or reckless disregard of its lack of a reasonable basis to deny plaintiffs' claim. Since there has been no showing by defendant that plaintiffs cannot meet their burden of proving defendant's knowledge or reckless disregard as a matter of law, summary judgment cannot be granted on that ground.

### IV. Conclusion

There are disputed issues of fact regarding whether or not defendant had a reasonable basis to deny plaintiffs' claim. Defendant's motion for summary judgment will be **DENIED**. An appropriate order follows.